## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| NARCISO JOSE ALEJANDRO | ) | |
| CASTELLANOS, on behalf of himself | ) | CASE NO. 14-cv-12609 |
| and others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Hon. Stephen J. Murphy, III |
| | ) | |
| WORLD WIDE DISTRIBUTION | ) | Magistrate: Stephen Whalen |
| SYSTEMS USA, LLC d/b/a | ) | |
| SYSTEMS USA, RAJAT MOHAN, | ) | |
| JESSICA RODRIGUEZ, | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S RULE 56 MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

ISSUES PRESENTED................................................................................................ii

TABLE OF AUTHORITIES ...................................................................................iii

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ............................................................................................................ 7

I.       STANDARD FOR SUMMARY JUDGMENT ........................................... 7

II.      PLANTIFF''S CLASS IS ENTITLED TO SUMMARY JUDGMENT ON IT''S CLAIMS
UNDER THE RICO STATUTE ................................................................... 7

A.       The undisputed facts establish that Defendants violated the RICO Statute by (1)
participating in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering
activity.................................................................................................................8

B.       By repeated use of the wires to commit multiple instances of fraud, Defendants
committed the predicate acts necessary for a finding of liability under the RICO statute.........9

C.       Alternatively, by committing multiple instances of visa fraud Defendants committed the
predicate acts necessary for a finding of liability under the RICO statute................................12

D.       Plaintiffs need not have been the recipients of Defendants'' fraudulent communications
regarding their TN visas, nor need they have relied on these in order for liability to attach under
the RICO statute .................................................................................................... 13

III.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGEMENT ON HIS INDIVIDUAL
CLAIM FOR BREACH OF CONTRACT ............................................................ 15

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether Plaintiff's class members are entitled to a finding of liability on their counts under the RICO statute based on the undisputed facts in the case?

Answer: Yes.

2.      Whether Plaintiff is entitled to summary judgment on his individual claim for breach of contract?

Answer: Yes.

# TABLE OF AUTHORITIES

*Ace Pro Sound and Rcdg., LLC v. Albertson*, 512 F. Supp. 2d 1259 (S.D. Fla. 2007) . . . . . . . . 8

*Babson v. United States*, 330 F.2d 662 (9th Cir.), *cert. denied*, 377 U.S. 993 (1964). . . . . . . . . . . . . . . 11

*Bridge v. Phoenix Bond*, 553 U.S. 639 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-14

*Cacy v. United States*, 298 F.2d 227 (9th Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chicago Title Ins. Corp. v. Magnunson*, 487 F.3d 985 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . .7

*Cook v. Little Caesar Enters., Inc.,* 210 F.3d 653 (6th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . 12

*M & D, Inc. v. W.B. McConkey,* 231 Mich. App. 22 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mallory v. City of Detroit*, 181 Mich.App 121 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pawlak v. Redox Corp.,* 182 Mich.App 758 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Silverman v. United States,* 213 F.2d 405 (5th Cir.) cert. denied 348 U.S. 828 (1954) . . . . . . . . 11

*Special Purpose Accounts Rcvbl. Co-op. Corp. v. Prime One Capital Co.*,
202 F. Supp. 2d 1339 (S.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Del Valle*, 674 F.3d 696, 704 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Flores,* 572 F.3d 1254 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Pearlstein*, 576 F.2d 531 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Turkette,* 452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vaughn v. Lawrenceburg Power Sys.,* 269 F.3d 703 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . .7

*West v. United States*, 68 F.2d 96 (10th Cir. 1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATEMENT OF FACTS

Plaintiff Narciso Jose Alejandro Castellanos is a Mexican citizen who is educated as a computer systems analyst. (Plaintiff''s Statement of Undisputed Facts - 1 hereinafter "SUF") In 2013, plaintiff received a written offer of employment ("offer letter") from defendant Systems USA (SUSA) to work as a Computer Systems Analyst in the United States for a salary of $52,000 annually. (SUF 2) The offer letter stated as follows:

> "On behalf of systems USA, I am pleased to offer you a position as computer systems analyst. You''re beginning salary will be $52,000. As a full-time employee, you will be eligible to participate in systems USA benefits which include a healthcare/medical insurance plan, dental plan, and long-term disability plan. In addition you will receive 10 days of paid vacation and company holidays.
>
> This offer of employment at will is contingent upon the following: your execution of this letter/attached employment agreement; approval of TN Visa; Proof of employment eligibility (I – 9). (SUF 3)

The offer letter only stated these three contingent conditions for employing Mr. Castellanos. (SUF 4)

He applied for and received a TN Visa granting him legal authorization to work in the U.S. at a professional level pursuant to 8 U.S.C. § 1184(e)(2). (SUF 10) A person seeking a TN visa must provide proof of Canadian or Mexican citizenship and a letter from the prospective employer describing the following: (a) the professional activity to be engaged in; (b) the purpose of his entry; (c) the anticipated length of stay; (d) the visa beneficiary's educational qualifications; (e) the beneficiary's compliance with applicable state law; and(f) arrangements for pay. 8 C.F.R. §§214.6(d), (e).

Documentation must include proof of citizenship, a letter from the prospective employer describing in detail the activities to be performed to show they are in a professional capacity, diplomas, degrees, certificates or professional memberships and must affirm (a) professional

activity to be engaged in; (b) purpose of entry; (c) anticipated length of stay; (d) beneficiary's educational qualifications; (e) beneficiary's compliance with applicable state law; and (f) arrangements for remuneration. Mexicans desiring TN status need only submit a passport at the consulate and a visa application form with a letter of employment in the U.S. that indicates the position in question and why the position requires a professional consistent with the North American Free Trade Agreement (NAFTA), Chapter 16, Annex 1603, Appendix 1603.D.1. The applicant must also present evidence that s/he is a professional. With the requirements in hand TN visas are issued within three days of applying.

Defendant SUSA sent, via email, a TN letter of support ("TN letter") to Plaintiff to submit with his visa application to the U.S. embassy in Mexico, again stating that it intended to employ him as a Computer Systems Analyst at a salary of $52,000 annually. (SUF 7) Based on the representations in the offer letter and the letter of support, plaintiff incurred personal expenses to secure the visa and travel to the U.S. to take up employment with defendant SUSA. (SUF 11) Unbeknownst to plaintiff at the time, defendant made false statements in both letters. (SUF 4-9, 12, 23)

The letter did not mention that Mr. Castellanos would only get paid the promised salary if he were performing software development work. (SUF 5) The letter did not state that in order to get paid Mr. Castellanos would have to be approved for a project by a third-party for whom Mr. Castellanos would be working. (SUF 6) In addition to the offer letter that SUSA sent to Mr. Castellanos, Defendant Jessica Rodriguez emailed him a letter that was prepared by Rajat Mohan, which was intended to support the TN visa application that Mr. Castellanos would submit (TN letter). (SUF 7) The TN visa letter said that SUSA would pay Mr. Castellanos a

salary of $52,000 per year, and that his services would be required between March 28, 2013 and March 27, 2016. (SUF 8)

The TN letters were prepared by and sent by Defendants to Plaintiff Castellanos and all other class members. These did not state that SUSA had no intention of paying plaintiff until he was approved by and placed with a third-party employer. (SUF 9) On the basis of the letter drafted by and supplied by SUSA, Plaintiff applied for and received a TN Visa granting him legal authorization to work in the U.S. at a professional level pursuant to 8 U.S.C. § 1184(e)(2). (SUF 10) Based on the representations in the offer letter and the letter of support, plaintiff incurred personal expenses to secure the visa and travel to the U.S. to take up employment with defendant SUSA. (SUF 11)

Defendants falsely represented in the TN letter and offer letter that they would pay Plaintiff a salary of $52,000 per year when they had no intention of doing so even before Plaintiff arrived in the U.S. to begin working. (SUF 12) At deposition Jessica Rodriguez admitted that she never put in writing to Mr. Castellanos the fact that he would not get paid until he was doing software development, and approved of by a third party employer. (SUF 13 ) When Mr. Castellanos asked of Jessica Rodriguez in a Skype conversation, whether he should report to SUSA"s offices in Michigan, or to an assignment somewhere else, Jessica Rodriguez replied that he would come to Michigan first, and that he would answer calls from prospective clients until he was able to get a Social Security card and open a bank account. (SUF 14 )

Defendant Mohan, insisted at deposition, that he told Castellanos and every prospective developer that they would not get paid unless they were coding and approved by a third party employer. (SUF 15) When asked if the developers would get paid for taking the phone calls paced by prospective clients of SUSA, Mohan responded as follows:

Q.Were they getting paid when they were taking those calls?
A. No. They are not paid for taking those calls. As software developers, we pay the
software developers to do development work. (SUF 16)

Prior to making any employment offer or sending any TN visa letter to developers,
Defendant Mohan knew that he would not, and planned not to, pay developers until approved by
and placed with third party employers. Mohan knowingly sent a deceptive and fraudulent offer
letter to developers to induce them to come to the United States and "work" for SUSA. (SUF 17)
Mohan also knowingly provided a deceptive and fraudulent TN visa letter to developers for them
to use to secure a TN visa on the basis of false representations that SUSA was offering
"employment" to the developers when in fact it intended not to pay them unless and until
approved by and placed with a third party employer. (SUF 18)

Defendants" clear intention even before any contact was made with a prospective
employee, as attested to by Rajat Mohan, was to not pay Plaintiff and other class members unless
they were doing "development work" or otherwise performing software development work.
(SUF 19) Defendant Mohan testified that in some cases when a project ended there would be a
period of time before the developer was placed into another project and that they also would not
be paid a salary during these gaps. (SUF 20)

Defendant Mohan"s claim that developers were told they would not be paid unless they
approved by a third party and coding, evinces a clear intent to not pay developers even as they
omitted this material term from both the offer letters and the TN letters and in contravention of
the terms of employment as set out in both. (SUF 21) Defendant Mohan"s claim that developers
were told they would not be paid unless they were approved by a third party and coding evinces
his intent to not pay developers, in contravention of State and Federal wage and hour laws which
require individuals to be paid when an employer requires their presence. (SUF 22)

Shortly after arriving in the United States, Plaintiff learned from other class members that Defendants did not, in fact, have a job available for him, would not employ him until they found a third party employer who would approve his hire, and would not pay him a salary until then. (SUF 23) Defendants required Plaintiff and other class members to be present at the offices interview for positions with third-party employers. (SUF 24) Plaintiff learned that defendant"s common practice was to secure foreign nationals" presence in the U.S. through TN visas premised on false offers of employment. Once they were present in the U.S., Defendants did not provide a salary to developers and instead required them to interview for third-party positions. (SUF 25) Based on this practice, plaintiff and similarly situated individuals were harmed because they were not paid the agreed salary and were not compensated for time that they were required to interview with third-party contractors. (SUF 26) Plaintiff testified, and Defendant Rodriguez confirmed that Defendants required his and other class members" daily presence in the office during normal work hours at SUSA"s offices in order for SUSA to be able to eventually place them into positions with third parties. (SUF 27)

Defendants Rodriguez and Mohan now run a company called Precedency Solutions which follows the same business model as did SUSA. (SUF 28) At deposition Rodriguez testified that a number of years ago SUSA stopped recruiting developers, instead Mohan and Rodriguez shifted their recruitment and hiring efforts to a new company called Precedency Solutions. (SUF 29) Rodriguez testified that all new developers after a certain date were recruited and hired through Precedency Solutions. (SUF 30) Rodriguez admitted that Precedency continues to provide TN letters that are submitted to the US Embassy in Mexico which omit any mention of the fact that visa beneficiaries will not begin to be paid the salary promised in the TN letters, until they are interviewed and approved by third parties and that this

may take a significant amount of time. (SUF 31) Rodriguez stated that the notable change in procedure includes written notice of this fact to the visa beneficiaries but not to the U.S. Embassy considering the applications. (SUF 32) Rodriguez testified that although she now primarily performs services for Precedency Solutions, she continues to get paid by SUSA. (SUF 33)

At deposition, both Mohan and Rodriguez testified that they had never provided developers with a TN letter that disclosed the fact that SUSA would only pay developers after they had been approved by and placed with a third party employer on a given project – whether at Precedency or SUSA. (SUF 34) At deposition, both Mohan and Rodriguez disclaimed any knowledge about what would happen if the TN letters provided by Defendants revealed that SUSA would only pay developers after they had been approved by and placed with a third party employer on a given project. (SUF 36)

On February 20, 2015, Plaintiff moved for class certification on the RICO, TVPA, fraud, and breach of contract claims pursuant to Federal Rule of Civil Procedure 23. On August 19, 2015 the Court denied that motion without prejudice to allow for further discovery relevant to the requirements of Rule 23. On December 17, 2015, Plaintiff renewed his motion for class certification on the RICO and TVPA counts which the Court granted on June 20, 2016, as to the RICO counts and denied as to the TVPA counts. Plaintiff originally brought a complaint for violation of RICO, the TVPA, the FLSA, constructive and common law fraud, and breach of contract. Plaintiff voluntarily dismissed certain defendants, and the TVPA count.

## ARGUMENT

### I.      Standard For Summary Judgment.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001).

When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Rule 56 places an affirmative duty on the nonmovant to cite to "particular parts of materials in the record" to establish that a particular fact cannot be supported or is genuinely disputed. Fed.R. Civ. P. 56(c)(1); see *Chicago Title Ins. Corp. v. Magnunson*, 487 F.3d 985, 995 (6th Cir. 2007). District courts need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment. *Chicago Title Ins.*, 487 F.3d at 995.

### II.     The Plaintiffs' Class Is Entitled To Summary Judgment On Its Claims Under The Rico Statute.

Plaintiff is entitled to Summary Judgment on the RICO claims in the case. Defendants Mohan, Rodriguez and SUSA all participated in scheme in which they used the wires to transmit fraudulent offer letters and fraudulent TN visa letters which they instructed Plaintiff and other class members to submit to receive a TN visa. They used virtually the same TN visa letters and

offer letters in the case of all 57 – odd class members. In every case, the U.S. Embassy in Mexico, took these letters at face value and granted the visas which failed to apprise Embassy officials that the "employment" offered to Plaintiff and class members was wholly contingent on their being approved by and placed with third party employers. In every case, the U.S. Embassy in Mexico, took these letters at face value and granted the visas which failed to apprise Embassy officials that Plaintiff and class members would also not be paid until such third parties accepted them.

A.     **The undisputed facts establish that Defendants violated the RICO Statute by (1) participating in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.**

Title 18 U.S.C. § 1964(c) entitles those who have been injured in [their] business or property by reason of racketeering, among other actions, to treble damages, costs, and fees. Plaintiffs can recover under § 1964(c) if they can demonstrate an injury to ―business or property. The Supreme Court has instructed that RICO is to be read broadly. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).

The elements for a civil RICO claim consist of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property.*" Ace Pro Sound and Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1266 (S.D. Fla. 2007); accord *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co*., 202 F. Supp. 2d 1339 (S.D. Fla. 2002).

An enterprise is any union or group of individuals" that is "associated together for a common purpose of engaging in a course of conduct." 18 U.S.C. § 1961; *United States v. Turkette*, 452 U.S. 576, 583 (1981). In the context of a RICO conspiracy, only a slight effect on interstate commerce is required. *United States v. Flores*, 572 F.3d 1254, 2009 WL 1842652, at

10 (11th Cir. 2009). One may satisfy the three-pronged test necessary to establish a "pattern of racketeering activity" by showing: (1) that Defendants committed more than two predicate acts within a ten-year span, see 18 U.S.C. § 1961(5); (2) that the predicate acts are related to each other; and (3) that the illegal conduct is of a continuous nature. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).

RICO requires that a pattern of racketeering be established by a violation of a pre-determined list of statutes, including Title 18. In this case, RICO violations can be established under both Wire Fraud and Fraud in Foreign Labor Contracting, 18 U.S.C. § 1343 and 18 U.S.C. § 1351. The federal mail fraud statute, 18 U.S.C. § 1341, and the federal wire fraud statute, 18 U.S.C. § 1343, contain the following essential elements: 1) a scheme to defraud or obtain money or property by false pretenses; 2) use of mails [or interstate wires, including telephones] in furtherance of the scheme; and 3) culpable participation by the defendant. *United States v. Pearlstein,* 576 F.2d 531, 534 (3d Cir. 1978).

**B.     By repeated use of the wires to commit multiple instances of fraud, Defendants committed the predicate acts necessary for a finding of liability under the RICO statute.**

To succeed on a common law fraud claim, a plaintiff must prove the following elements: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages." *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27 (1998). In the present case, Plaintiff has established all of these elements on the basis of undisputed or undisputable facts.

First off, there is no question that an employment contract that purports to make payment contingent on the occurrence of certain conditions must expressly state these conditions. In this case, Defendants made representations to Plaintiff through the offer letters and TN letters that they would be paid a certain salary upon meeting three conditions. Namely, their "execution of this letter/attached employment agreement, approval of TN Visa and proof of employment eligibility (I – 9)." (SUF 3) Castellanos complied with these requirements.

These representations were patently false and Defendants knew them to be so. Defendants Mohan and Rodriguez tried repeatedly to defend their omission of the material contract term that they had no intent to pay Plaintiff and class members until and unless they were vetted and approved by a third party. (SUF 12-23) Mohan and Rodriguez claimed to have told Plaintiff and class members that they would only be paid upon being hired by a third party but have never produced a document in which this was put in writing to class members. (SUF 13, 15, 34) In this case, the purpose of the offer letter was to induce class members to accept the "positions" they were being "offered" – by its very nature an employment offer seeks to induce a recipient to accept it.  All class members ended up coming to the United States as a result. (SUF 26) All class members suffered damages when they were not paid upon their arrival in the United States. (SUF 26)

**Plaintiff has demonstrated a pattern of racketeering through repeated violations by Defendants of the wire fraud statute**

By the use of the wires to perpetrate this scheme, Defendants committed multiple acts of wire fraud. The federal wire fraud statute, 18 U.S.C. § 1343, contains the following essential elements: 1) a scheme to defraud or obtain money or property by false pretenses; 2) use of interstate wires in furtherance of the scheme; and 3) culpable participation by the defendant. *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir. 1978). The scheme is one to defraud if it

is reasonably calculated to deceive persons of ordinary prudence and comprehension. *Silverman v. United States*, 213 F.2d 405 (5th Cir.), *cert. denied* 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653 (1954).

Proof of intent specific intent to violate the predicate acts statutes is not necessary:

> The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise"s affairs through a pattern of acts indictable as mail fraud. Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." § 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," Schmuck v. United States, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), even if the mailing itself "contain[s] no false information."
>
> *Bridge v. Phoenix Bond*, 128 S.Ct. 2138 (citation and internal quotation marks omitted).

Not only are the patently false statements prohibited, but also those made with a reckless indifference as to whether they are true or false. *Babson v. United States*, 330 F.2d 662 (9th Cir.), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1045 (1964); *West v. United States*, 68 F.2d 96 (10th Cir. 1933).  Similarly, the deceitful concealment of material facts may also constitute actual fraud.  *Cacy v. United States*, 298 F.2d 227 (9th Cir. 1961).  Jobs are property for purposes of mail fraud. *United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008). Furthermore, whether or not jobs are "property", the money paid for the job (that is, the salary) is "money." *United States v. Del Valle*, 674 F.3d 696, 704 (7th Cir. 2012).

Here, Plaintiffs have shown that there was a scheme to defraud class members as the offer letters sent to class members (as well as the TN visa letters as discussed more thoroughly below), omitted any mention of additional terms for employment. (SUF 9, 12) This, even though Defendants knew and had every intent *not* to pay class members the promised salary until and

unless approved by third parties for projects. (SUF 16, 17, 19, 21, 22) By omitting these material terms Defendants want to play it both ways. They argue that they did not deceive class members because they purportedly "told" them of these material terms they then omitted from the letters, but also have left no paper trail that they told class members of this -- either because they didn"t really tell them or because they didn"t want to leave tracks which would show they sought to and did in fact deceive the U.S. Embassy with the TN letters which also omitted this information. Moreover, Defendants drafted the contracts and the contracts contain no latent ambiguity. Under Michigan law, a court is barred from considering extrinsic evidence in the absence of some ambiguity as to the meaning or import of the contract"s terms. *Cook v. Little Caesar Enters., Inc*., 210 F.3d 653, 656 (6th Cir.2000). Defendants seek to alter, after the fact, a contract which they had complete control over and in which they chose to omit terms they now claim should bind class members. This in itself is deceitful and fraudulent.

Class members were harmed by Defendants" conduct -- either the jobs class members were promised are property, or the money they would have made at the jobs, but were deprived of, is property. (SUF 26) Defendants Mohan and Rodriguez participated in using SUSA as an enterprise to commit these repeated and multiple acts of wire fraud. (SUF 2-22, 24, 28-33)

**C.    Alternatively, by committing multiple instances of visa fraud Defendants committed the predicate acts necessary for a finding of liability under the RICO statute.**

The RICO statute also includes visa fraud and fraud in labor contracting as predicate acts. Plaintiff"s complaint cites two additional bases for RICO liability, visa fraud (18 U.S.C. §1546) and fraud in foreign labor contracting (18 U.S.C. §1341). (Docket 1 pp.6-7) As stated above, Defendants omitted any mention of the contingent nature of their employment offer when they prepared the TN visa letter to be sent to the United States embassy. (SUF 7-11,12, 15-19)

The regulations implementing the TN visa program define who is eligible for the benefit, 8 C.F.R. § 214.6(b) state: "Engage in business activities at a professional level means the performance of prearranged business activities for a United States entity, including an individual." Prearranged means agreed to in advance of. In the present case, as conceded by defendants, Mr. Castellanos" and class members" employment was not prearranged if they had to interview in the United States after their arrival here. (SUF 16-18, 23, 24) That the interviews with third party employers were not held prior to class members" arrival in the United States, in and of itself points to a failure to adhere to the terms of the regulations which required "prearranged" employment to qualify for a TN visa. This material omission constitutes visa fraud and fraud in foreign labor contracting as the U.S. Embassy would not have issued the TN visas if the contingent and not prearranged nature of the offer of employment had been revealed to the embassy.

As with the wire fraud committed, here too Defendants Mohan and Rodriguez used the enterprise SUSA, to commit visa fraud and fraud in foreign labor contracting. Both were active participants in concealing from the U.S. Embassy that they had no intention of actually paying class members the money promised until and unless a third party approved them. (SUF 13, 14, 16-18, 19, 21,23, 24) Also, as with the wire fraud predicate acts class members were harmed by being deprived of jobs, money or both. (SUF 26)

**D.      Plaintiffs need not have been the recipients of Defendants' fraudulent communications regarding their TN visas, nor need they have relied on these in order for liability to attach under the RICO statute.**

The Supreme Court has held unambiguously that the type of civil RICO claim at issue in this case does not require proof of individual reliance. In *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 649-650 (2008) the Supreme Court explained:

"Reliance is not a general limitation on civil recovery in tort; it „is a specialized condition that happens to have grown up with common law fraud.‟ " Anza, 547 U.S., at 477, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) (quoting Systems Management, 303 F.3d, at 104). That "specialized condition," whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud and that does not require proof of reliance.

In the present case, Defendants have seemed to argue at deposition that because they allegedly told class members that they would not be paid until vetted and hired by a third party there has been no fraud. This overlooks completely the instruction of the Court in *Bridge v. Phoenix,* that a RICO plaintiff need not have even received a fraudulent communication, nor relied on it to establish liability under the Act. In this case, Defendants provided a fraudulent letter for class members to give to the U.S. Embassy in support of their TN visa applications.

The result of this fraud -- the granting of the visas to class members to travel to the U.S. only to be denied pay (SUF 15-18), even while Defendants required them to be present (SUF 27) is what has caused class members‟ harm. If class members were not present in the United States they could not have been harmed as they would not have been working or required to be present during normal business hours (in violation of State and Federal wage and hour laws). It really was securing their presence, and then their acquiescence to the scheme which facilitated class members‟ exploitation.

When asked why he continued to stay even after he wasn‟t being paid by Defendants, Plaintiff Castellanos had the following exchange:

> Q. After three weeks had passed, why didn't you return to Mexico?
> A. Because I had the illusion of being able to obtain a good job, a good workplace, et cetera.
> THE INTERPRETER: It could also be translated as the hope, not illusion.
> THE WITNESS: I had the hope of being able to obtain a good job and to be able to take my family to live over there. (SUF Exhibit D p. 16)

Having quit his job, spent his own funds to secure the TN visa and travel to the United States, Castellanos continued to hold out hope that Defendants would perform under the promised contract. This hope turned out to be in vain due to Defendants scheme to place class members in a position where they weren''t likely to complain lest they lose the opportunity to secure the well-paid (compared to Mexico) jobs they were enticed with by Defendants.

### III.   Plaintiff Is Entitled To Summary Judgement On His Individual Claim For Breach Of Contract.

In Michigan, to establish a breach of contract, a plaintiff must first establish the elements of a contract. *Pawlak v. Redox Corp.*, 182 Mich.App 758, 765; 453 NW2d 304 (1990). A valid contract requires: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Mallory v. City of Detroit*, 181 Mich.App 121, 127 (1989).

Here: 1) the parties were both clearly of legal age and mental competency to enter into the contract; 2) the subject matter of the contract as presented to Castellanos was legal and proper as far as Castellanos knew; 3) Castellanos promised to come to the U.S. and work as a Computer Systems Analyst at a rate of $52,000 per year, defendants promised to pay him that (SUF 2); 4) as a fairly typical employment contract there is mutuality of agreement – job duties, price, length and start and end dates are specified in the contract and related visa documents(SUF 2-4); 5) both parties are similarly obligated to perform. (SUF Exhibit A pp.14, 1-2)

Furthermore, the TN letter sent by SUSA to Plaintiff to present to the United States embassy to support Plaintiff''s application for a TN visa constituted an offer of employment. Plaintiff accepted Defendants'' offer by signing and returning the job offer, resigning his job, and expending time and money upon accepting Defendants'' offer thus commencing performance.

Defendant breached the employment agreement by failing to pay Plaintiff, as contracted,

upon Plaintiff''s arrival and presentation for work. (SUF 12,15-17,19) Plaintiff damages for

Defendants'' breach are $156,000 or the promised $52,000 for a period of three years (SUF 3,8)

For all the foregoing reasons Plaintiff respectfully requests that this Court Grant his  Partial Motion for

Summary Judgment, finding liability on the RICO class claims and on the individual breach of contract

claim.

By:  /s/ Jorge Sánchez
One of Plaintiff''s Attorneys


Jorge Sánchez
(Illinois ARDC # 6244796)
77 W. Washington
Suite 1313
Chicago, Illinois 60602
Tel. 312.420-6784
jsanchez@lopesanchezlaw.com

July 14, 2017

CERTIFICATE OF SERVICE


I, Jorge Sanchez, an attorney, certify that on July 15, 2017  I electronically filed the foregoing PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RULE 56 MOTION FOR SUMMARY, PLLAINTIFF'S STATEMENT OF UNDISPUTED FACTS with Exhibits with the Clerk of the Court of the United States Court for the Eastern District of Michigan Division, using the CM/ECF System, which will send an electronic notification to the following counsel of record:


Michael C. Simoni
Miller Canfield
840 West Long Lake Road, Suite 150
Troy, Michigan 48098 (USA)
T +1.313.496.7583
simoni@millercanfield.com

and

Nicole Marshall
Marshall Law, PLLC
Attorneys for Defendants
189 W. Clarkson Rd. Ste.
Lake Orion, MI 48362
P (248) 429-9529
nicole@marshalllawmi.com


s/ Jorge Sánchez

1