# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| NARCISO JOSE ALEJANDRO CASTELLANOS, on behalf of himself and others similarly situated,<br>    Plaintiff,<br>        v.<br><br>WORLD WIDE DISTRIBUTION SYSTEMS USA, LLC d/b/a SYSTEMS USA, RAJAT MOHAN, JESSICA RODRIGUEZ<br>    Defendants, | Case No. 2:14-cv-12609<br><br>Hon. Stephen J. Murphy, III |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**I. Class members are entitled to summary judgment on the RICO claims**
**A. Class members all suffered a domestic injury**

"RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). Here the business of class members is computer programming. By failing to pay them as contracted, Defendants damaged class members in their business. The Seventh Circuit held in *United States v. Sorich*, 523 F.3d 702,713 (7th Cir. 2008) that for purposes of the mail fraud statute jobs are property:

> Jobs are a lot like contracts. Neither is a bag full of money but both are immensely valuable: a contract is a promise to pay for services rendered, while a job is the exchange of labor for a paycheck. Hence just as *Leahy* held that fraudulently obtained contracts are property, courts have found that salaries fraudulently obtained, *United States v. Doherty*, 867 F.2d 47, 56, 60 (1st Cir.1989) (Breyer, J.), and *job opportunities fraudulently denied*, *United States v. Douglas*, 398 F.3d 407, 417-18 (6th Cir.2005); *United States v. Granberry*, 908 F.2d 278, 280 (8th Cir.1990), represent property for purposes of mail fraud.

Class members who were denied payment when they showed up for and were required to show up for work suffered a domestic loss to their business and/or property. As to the money paid for travel and the TN visas, the harm was not in the payment of the money abroad, but in the failure to reimburse class members here, in the United States, when they arrived. This decision was undertaken and the harms that flowed from it occurred wholly in the United States.

### B. Class members had valid enforceable contracts and not mere expectancies

Contrary to Defendants' assertions at Docket 66 pp.16-17, *Heinold v. Perlstein*, 651 F. Supp.1410 (E.D. Pa. 1987), has no applicability here.  In that case, it's not clear whether the Plaintiff pled an enterprise, which was used to conduct a pattern of racketeering or even what any single predicate act might be. The buyer of a diamond ring sued under RICO to recover profits lost because he believed the ring to be more valuable than what was represented to him this is the entirety of the factual background presented in *Heinold*.  These facts come nowhere near the facts here where class members were promised jobs and signed contracts entitling them to the salaries when they fulfilled the three contingencies – signing the offer letter, being approved for a TN visa and proof of employment eligibility. (Docket 59-1 p.16)

Defendants seem to misapprehend Plaintiff's claim when they argue that the expectation interest would not have existed but for the alleged RICO violation. There was a valid contract and not a mere expectation. The contract was not the RICO violation – wire fraud, visa fraud and fraud in foreign labor contracting were the predicate acts which triggered RICO liability. By supplying class members with a TN visa letter that failed to disclose Defendants' intent to not pay class members until it found a third party to pay for them, Defendants violated RICO. The RICO violation did not create class members' property interests, the

employment contract and TN visa letter did. Had Defendants paid class members when they began showing up daily to work, there would be no case here and the contracts would have been respected. By not paying class members once they showed up daily to work, Defendants triggered RICO.

In *Strates Shows, Inc. v. Amusements of Am., Inc.,* 379 F. Supp. 2d 817, 827 (E.D.N.C. 2005) cited by Defendants at Docket 66 p.17, a contractor sued because he alleged that he was denied a contract he bid upon due to an alleged RICO scheme. In *Strates* there was no existing contract, unlike in the present case (Docket 59-1 p. 16) just a bid to get one.

**C. The contracts entered into with class members were not at-will.**

Under Michigan law employment contracts are presumed to be at-will. However, the presumption of employment at will can be overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause. *Lytle v. Malady*, 579 NW 2d 906, 911 (1998). In the present case, by signing the offer letter, being approved for a TN visa and providing proof of employment eligibility class members entered into an enforceable contract (Docket 59-1 p.16). They also began performance by coming to the United States and presenting themselves for work daily to SUSA's offices.

The TN visa letter supplied to class members to give to the U.S. Embassy by Defendants makes clear that the contract is for a specific term: "We require Mr. Castellanos [sic] services temporarily for three years, starting 03/28/2013 and

3

ending no later than 3/27/2016." (Docket 59-1 p. 3)  The letter also stated "Mr. Castellanos *will be working* with Systems USA as  Computer Systems Analyst from 03/28/2013." (Id. (emphasis supplied))  Nothing in the two documents qualifies these terms, or states that the job is one that is at-will. Because the contract contains a definite term of employment it no longer can be considered at-will – despite Defendants' self-serving statements asserting otherwise. Employment contracts for a definite duration are presumptively terminable only for just cause. *Toussaint v Blue Cross & Blue Shield of Michigan*,  292 NW2d 880, 891(1980)(" Where the employment is for a definite term a year, 5 years, 10 years it is implied, if not expressed, that the employee can be discharged only for good cause.") Any extrinsic evidence about what Defendants claim to have said to class members cannot alter the fact that on its terms the contract requires no resort to such evidence.  Material terms such as the ones Defendants suggest exist, are not present and cannot be considered to change the meaning of a contract that is plain on its face as is the one here.

### D. Defendants committed numerous predicate acts.

Plaintiff has demonstrated that the 57 TN visa letters used to acquire the TN visas for class members all uniformly failed to disclose the peculiar payment arrangement the Defendants had in mind. While both Rodriguez and Mohan disclaim any knowledge as to what would happen if the information regarding the

4

payment arrangement Defendants planned but did not disclose, this evinces, if not intent, at the least reckless disregard or willful disregard of the law.

Fraud in Foreign Labor Contracting requires one, with knowledge and intent to defraud, to recruit, solicit or hire a person outside the United States for purposes of employment in the United States or who causes another person to recruit, solicit, or hire a person outside the United States, or attempt to do so, by means of materially false or fraudulent pretenses, representations or promises regarding that employment. 18 U.S.C § 1351. The federal mail fraud statute, 18 U.S.C. § 1341, and the federal wire fraud statute, 18 U.S.C. § 1343, contain the following essential elements: 1) a scheme to defraud or obtain money or property by false pretenses; 2) use of mails [or interstate wires, including telephones] in furtherance of the scheme; and 3) culpable participation by the defendant. *United States v. Pearlstein,* 576 F.2d 531, 534 (3d Cir. 1978). The scheme is one to defraud if it is reasonably calculated to deceive persons of ordinary prudence and comprehension. *Silverman v. United States*, 213 F.2d 405 (5th Cir.), cert. denied 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653 (1954). Direct proof of willful intent is not necessary and may be inferred from the activities of the parties involved. *Henderson v. United States,* 202 F.2d 400 (6th Cir. 1953).

Not only are the patently false statements prohibited, but also those made with a reckless indifference as to whether they are true or false. *Babson v. United States*, 330 F.2d 662 (9th Cir.), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d

5

1045 (1964); *West v. United States*, 68 F.2d 96 (10th Cir. 1933). Similarly, the deceitful concealment of material facts may also constitute actual fraud. *Cacy v. United States*, 298 F.2d 227 (9th Cir. 1961) While Defendants repeatedly assert that they told all class members that they would not get paid until they were placed on a project, not telling them that it would take months to do so, when Defendants knew this to be the case is a deceitful concealment of material facts. The exchange with Castellanos is illustrative: when asked if he should report to Detroit or to a project placement Rodriguez response is that he needs to get a Social Security number and bank account. (Docket 59-6 p.6) These actions take a matter of days – the implication and intent was clear -- get your Social Security card and open a bank account and we'll place you. The answer was not "it might take weeks or months to place you and pay you the salary you contracted for."

This is far more than enough evidence to show that Defendants committed numerous predicate acts in furtherance of the RICO scheme. As such, the Court should grant judgment in favor of class members on these counts.

### E. Class members' injuries were caused directly and proximately by Defendants' actions, failure to act and material omissions

Defendants argue that by telling class members that they class would be paid on a per project basis "breaks the chain of causation." (Docket 66 p.28) This is misguided in that it equates a statement that class members would be paid "by project" to mean that they would wait months to be paid. There is nothing in the

record that Defendants can point to that would suggest that this was ever said to anyone, much less put in writing. Furthermore, without class members' presence in the U.S., Defendants could not have exploited them in the way they did. The RICO scheme could not have proceeded without the presence, obtained by fraud, of class members in the U.S.

The idea that disclosing that pay is on a per project basis doesn't negate intent, but bolsters it. Defendants have not claimed that they told class members that they might have to wait months to get paid. They implied that it would be a short time – the time needed to obtain proper work documentation and a bank account.

Defendants arguments here are also an attempt to backdoor an argument about reliance on false statements. If knowledge could disabuse class members of the idea that they would get paid immediately, then clearly this implies that class members had to rely on the deceitful actions of Defendants. But Supreme Court case law makes it clear that this is not the case:

> If petitioners' proposed requirement of first-party reliance seems to come out of nowhere, there is a reason: Nothing on the face of the relevant statutory provisions imposes such a requirement. Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation. See *Neder v. United States*, 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("The common-law requiremen[t] of 'justifiable reliance' ... plainly ha[s] no place *649 in the [mail, wire, or bank] fraud statutes"). And one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation. *Bridgestone*, 553 U.S. at 648-9.

Because reliance is not required, providing information to class members (which was not done) even if it were done, does not break the chain of causation because causation does not require reliance on the false statements – only that class members have been injured by the conduct of an enterprise through the commission of numerous predicate acts.

### F. Defendants Mohan and Rodriguez acted for their personal benefit.

Mohan testified that he billed out class members at $90-$100 per hour. (Docket 59-5 p. 14 (dep. p. 48))While paying class members in the $50-60,000/year range (Exhibit 59-2 TN visa letters containing salary offered), SUSA collected approximately three to four times their salary ($100/hr*40hrs/week*52weeks = $208,000/per year). For each class member placed, Defendants collected nearly $150,000 per year. To say that they did not benefit personally from this is untrue, as Mohan owns SUSA and literally profits from it. Rodriguez' compensation was based on how many developers she placed so that she benefitted from the scheme as well. Finally, acting within the scope of one's employment is no defense to criminal acts.

### I. The Court should grant judgment to Plaintiff for breach of contract.
### A. Defendants and Castellanos entered into an employment contract with a definite term which vitiates any claim that it was at will.

As argues above at Section I. C., the presumption of employment at will in this case is overcome with proof that the parties entered into a contract provision for a

definite term of employment. *Lytle v. Malady*, 579 NW 2d 906, 911 (1998).  By signing the offer letter, being approved for a TN visa and providing proof of employment eligibility class members performed all that was required of them to make the contract binding. (Docket 59-1 p.16). They also began performance by coming to the United States and presenting themselves for work daily to SUSA's offices.

The TN visa letter supplied to class members to give to the U.S. Embassy by Defendants makes clear that the contract is for a specific term: "We require Mr. Castellanos [sic] services temporarily for three years, starting 03/28/2013 and ending no later than 3/27/2016."  (Docket 59-1 p. 3)  The letter also stated "Mr. Castellanos *will be working* with Systems USA as Computer Systems Analyst from 03/28/2013." (Id. (emphasis supplied))  Nothing in the two documents qualifies these terms, or states that the job is one that is at-will. Employment contracts for a definite duration are presumptively terminable only for just cause. *Toussaint v Blue Cross & Blue Shield of Michigan*,  292 NW2d 880, 891(1980)(" Where the employment is for a definite term a year, 5 years, 10 years it is implied, if not expressed, that the employee can be discharged only for good cause.")

Any extrinsic evidence about what Defendants claim to have said to class members (or that Defendants have put into declarations now attached to their pleadings) cannot alter, after the fact, that on its terms the contract requires no resort to such evidence.  The idea that the offer letter references another contract

9

not in the record is patently ridiculous. The contract states that the offer of employment is contingent upon "Your execution of this letter/attached employment agreement." (Docket 59-1 p. 15) Here, where there is no other employment agreement attached or in the record in any other way, it is clear that the sentence refers to the letter itself and that the letter is "this letter" and that the "/employment agreement" is another way she refers to the letter itself. In the absence of any additional letter sent at the time (and Defendants cannot point to any nor did they provide Plaintiff with any), there cannot be any other interpretation of the contract/letter.  As to not Castellanos not performing work, an employer cannot require employees (which Defendants call Castellanos), to present themselves daily at the office and not pay them. If they did not have work for Castellanos they should not have asked him to come to the U.S. and obligate him to report daily to work. Rodriguez testified that she required their presence. (Docket 60-1 p.14 (Dep p. 45) )

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

                                       By:  /s Jorge Sánchez
                                               Attorney for Plaintiffs

Lopez & Sanchez
77 W. Washington St.
Suite 1313
Chicago, IL  60602
(312) 420-6784

## CERTIFICATE OF SERVICE

I, Jorge Sanchez, an attorney, certify that on August 25, 2017, I electronically filed the foregoing PLAINTIFF'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court of the United States Court for the Eastern District of Michigan Division, using the CM/ECF System, which will send an electronic notification to the following counsel of record:

Michael C. Simoni
Miller Canfield
840 West Long Lake Road, Suite 150
Troy, Michigan 48098 (USA)
T +1.313.496.7583
simoni@millercanfield.com

and

Nicole Marshall
Marshall Law, PLLC
Attorneys for Defendants
189 W. Clarkson Rd. Ste.
Lake Orion, MI 48362
P (248) 429-9529
nicole@marshalllawmi.com


s/ Jorge Sánchez