UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NARCISO JOSE ALEJANDRO
CASTELLANOS,

        Plaintiff,                          Case No. 2:14-cv-12609

v.                                          HONORABLE STEPHEN J. MURPHY, III

WORLDWIDE DISTRIBUTION SYSTEMS
USA, LLC, et al.,

        Defendants.

_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT [58]**
**AND GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [57]**

Plaintiff Narciso Jose Alejandro Castellanos, on behalf of himself and other

similarly situated individuals, sued Defendants[1] alleging (I) a violation of 18 USC

§ 1962(c), (II) a violation of 18 USC § 1962(d), (III) a violation of 29 USC § 201, (IV) a

violation of 18 USC § 1595, (V) constructive and actual fraud, and (VI) breach of

contract. ECF 1. Plaintiff later dismissed Count IV, ECF 62, and the Court certified a

class[2] for Counts I and II, ECF 31. Now before the Court are Defendants' Motion for

Partial Summary Judgment on Counts I, II, and V, ECF 57, and Plaintiff's Motion for

---

[1] There were originally six defendants, but Plaintiff dismissed his claims against three of them. ECF 50. The remaining defendants are Worldwide Distribution Systems USA, LLC d/b/a Systems USA Inc., Rajat Mohan, and Jessica Rodriguez.

[2] The class is defined as "foreign nationals who were offered full-time employment by [Defendant Worldwide Systems USA, LLC], who accepted such employment and traveled to the United States to secure such employment, but who were not paid for varying amounts of time because their jobs did not begin upon arrival." ECF 31, PgID 425.

Partial Summary Judgment on Counts I, II, and VI, ECF 58. For the reasons set forth below, the Court will deny Plaintiff's motion and grant in part and deny in part Defendants' motion.

## BACKGROUND

Defendant Worldwide Distribution Systems USA, LLC ("SUSA") is an IT staffing firm, and its employees include Defendants Rajat Mohan and Jessica Rodriguez. ECF 57, PgID 554. Plaintiff, a Mexican citizen and trained computer analyst, emailed Rodriguez seeking employment with SUSA. ECF 57-4, PgID 614. SUSA ultimately extended an offer, and the parties executed an employment offer letter promising Plaintiff a $52,000 annual salary. ECF 59-1, PgID 697. SUSA then sent letters to the U.S. Embassy in Mexico requesting a TN Visa for Plaintiff. *Id.* at 684–85. Plaintiff alleges that, while in Mexico, he incurred expenses to secure the visa and to relocate to the United States to begin his employment. ECF 1, PgID 10–11. Once he arrived, however, Plaintiff did not start earning his salary. ECF 59-4, PgID 863. Rather, he was told that he would not be paid until his services were contracted to a third party—but he was still expected to report to SUSA daily. *Id.* at 863–64. The parties dispute whether Plaintiff was first informed of this arrangement while the parties negotiated Plaintiff's employment or after Plaintiff arrived in the United States. Regardless, Plaintiff remained in the United States for approximately five months waiting to be placed. *Id.* at 865. He ultimately decided to return home, and then brought suit.

## STANDARD OF REVIEW

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences" in the light most favorable to the nonmoving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

I.    Private RICO Cause of Action

The RICO statute creates a private cause of action for a "person injured in his business or property by reason of a violation of section 1962[.]" 18 USC § 1964(c). Section 1962 prohibits four types of activities: (a) investing income derived from a pattern of racketeering activity in an enterprise, (b) acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity, (c) conducting an enterprise's affairs through a pattern of racketeering activity, and (d) conspiring to violate any of the

3

first three prohibitions. 18 USC § 1962. In Counts I and II (the "RICO Claims"), Plaintiff has alleged violations of (c) and (d).

Before the Court can assess the merits of Plaintiff's claims, however, it must confirm that there is a cause of action. In the RICO Claims, Plaintiff alleges he suffered the following injuries: (1) funds spent to arrange for travel to the United States, (2) loss of job in Mexico to take to the position with SUSA, (3) funds spent to continue to reside in the U.S., (4) loss of the promised $52,000 salary, (5) separation from his family, and (6) distress, fear, and other intangible harms. ECF 1, PgID 10–12. The Court will address each injury in turn, but only the third injury is actionable.

A.    Harms Suffered Abroad

Plaintiff cannot bring a cause of action under § 1964(c) for harms suffered outside the United States. As a general principle, statutes do not apply extraterritorially absent clearly expressed congressional intent. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). Courts apply a two-step framework when analyzing extraterritoriality issues: first courts ask whether the presumption against extraterritoriality has been rebutted, and if it has not been rebutted then courts determine whether the case at hand presents a domestic issue. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016). The Supreme Court recently applied this framework to § 1964(d) and determined that the statute does not overcome the presumption against extraterritoriality. *Id.* at 2106. To prevail here, Plaintiff "therefore must allege and prove a *domestic* injury to its business or property." *Id.* (emphasis in original). Because Plaintiff suffered injuries one and two before he arrived to the United States, the harms are not domestic injuries. Consequently, they are not actionable

4

2:14-cv-12609-SJM-RSW Doc # 72 Filed 11/16/17 Pg 5 of 14 Pg ID 1195

under § 1964(c).

Plaintiff contends that the injuries suffered in Mexico are actionable because Defendants conducted the alleged racketeering in the United States. ECF 67, PgID 1108. In support of his position, Plaintiff argues that *RJR Nabisco* held that RICO applies to some foreign racketeering activity. ECF 67, PgID 1111. But Plaintiff's argument is misplaced.

To properly apply the holding in *RJR Nabisco*, one first must understand how the RICO statute is structured: § 1962 provides a list of prohibitions that are all premised on "racketeering activity." The statute defines "racketeering activity" as acts in violation of a laundry list of separate criminal statutes, which are known as predicates. 18 U.S.C. § 1961(1). The statute provides two enforcement measures to deter violations of § 1962: criminal penalties under § 1963 and civil remedies under § 1964. Accordingly, for a private plaintiff to prevail, he needs to show that (1) he can bring a cause of action under § 1964(c), and (2) there was a violation of § 1962.

Because of the RICO Act's structure, *RJR Nabisco* addressed two distinct questions: (1) whether the substantive prohibitions listed in § 1962 apply extraterritorially, and (2) whether the private cause of action provided by § 1964(c) applies to injuries that are suffered in foreign countries. *RJR Nabisco*, 136 S. Ct. at 2099–100. In answering the first question, the Supreme Court noted that some predicates apply to foreign conduct. *Id.* at 2101. The Supreme Court therefore held that some violations of § 1962 apply extraterritorially—not directly through § 1962—but to the extent that the statute that provides the predicate act applies extraterritorially. *Id.* at 2102–03 ("A violation of § 1962 may be based on a pattern of racketeering that includes

5

predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial.").

Plaintiff is correct to argue that the alleged violations of § 1962 occurred either domestically or as the result of predicate acts derived from violations of statutes that apply extraterritorially. But that is not where the analysis ends. Plaintiff must show not only a violation of § 1962, but also that he can bring a private cause of action under § 1964(c). In the analysis of § 1964(c), the Supreme Court held that the statute does not apply extraterritorially. *Id.* at 2106 ("Irrespective of any extraterritorial application of § 1962, we conclude that § 1964(c) does not overcome the presumption against extraterritoriality."). Accordingly, Plaintiff needs to show a domestic *injury*—not domestic racketeering activity. *Id.* at 2111 ("Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries."). Plaintiff incurred expenses to travel to the United States while he was in Mexico,[3] and the job he left was also in Mexico. Because those harms are not domestic, they are not actionable under § 1964(c).

B.    The lost salary

The plain language of § 1964(c) limits actionable harms to injuries to business or property. Accordingly, the question of whether Plaintiff's lost salary is actionable under § 1964(c) turns on whether Plaintiff had a property interest in the salary. The underlying

---

[3] At the hearing, Plaintiff argued that he was supposed to be reimbursed in the United States upon arrival. Although failure to reimburse in the United States could be a domestic injury, it is not alleged in the complaint and Plaintiff's counsel admitted that there is nothing on the record to show that the parties agreed to reimbursement. Consequently, the issue is not before the Court.

contract provided at-will employment, so Plaintiff did not have a property interest in the salary.

The parties agreed at oral argument that Michigan law governs the question of whether the underlying contract provided at-will employment. When interpreting a contract governed by Michigan law, the Court's primary obligation is to determine the intent of the parties. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 352, 375 (2003). If the contract's language is unambiguous, it should be construed and enforced as written as a matter of law. *Id.* Here, Plaintiff conceded at the hearing that there is no ambiguity in the contract, and the Court accepts the concession—at least for the present analysis.[4] The contract refers to an "offer of employment at will," ECF 59-1, PgID 697, therefore a plain reading of the contract suggests Plaintiff's employment was at will.

Next, the Court must decide whether an at-will employment contract creates a property interest cognizable under § 1964(c). Although state law plays a role, the Court must focus on Congress's intended meaning of a property interest because the Court is interpreting a federal statute. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565 (2013). Consistent with other areas of law, the Court finds that an at-will employment contract does not create a property interest. *See, e.g., Allen v. City of*

---

[4] The concession conflicted with Plaintiff's position in his briefs. Out of an abundance of caution, the Court will address Plaintiff's written argument. Plaintiff points to extrinsic evidence—namely, a letter sent to the U.S. Embassy in support of Plaintiff's visa application—to rebut the position that the employment here was at will. ECF 71, PgID 1182–83. But the letter was not an agreement between Plaintiff and Defendant—it was directed at the U.S. Embassy and Plaintiff neither provided any consideration nor executed the document. The letter is therefore insufficient to draw into question the plain terms of the executed offer letter.

*Jackson, Tenn*, 590 F. App'x 490, 492–93 (6th Cir. 2014) (recognizing that "at-will employees, whom employers can fire for any reason or no reason at all, lack the sort of 'property interests' in continued employment necessary for due process to apply") (citing *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994)); *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 766 (6th Cir. 2010) ("Michigan law generally presumes that employment relationships are at-will arrangements; at-will employees, in turn, have no property interest in their continued employment."); *Brown v. City of Niota, Tenn.*, 214 F.3d 718, 722 (6th Cir. 2000) (holding that at-will employment is not a property interest under Tennessee law); *Bailey v. Floyd Cty. Bd. Of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997) (holding that at-will employment is incapable of constituting a property interest under Kentucky law); *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989) (holding that a public employee does not have a property interest in continued employment when his position is held at will). Plaintiff therefore cannot bring an action for his lost salary under § 1964(c).

> C.   The Intangible Harms

The plain language of § 1964(c) limits actionable harms to injuries to business or property. Plaintiff's separation from his family as well as any fear or distress he suffered are not injuries to business or property. Consequently, injuries five and six are not actionable. *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989).

II.   Remaining RICO Claims

Plaintiff's only remaining injury is the funds he spent to reside in the United States. Plaintiff has a property interest in his money and he expended his funds in the United States, so the harms are actionable under § 1964(c). To prevail, however,

Plaintiff must show that Defendants violated §§ 1962(c) or (d). The Court finds that there is a genuine issue of material fact on that question, and therefore, summary judgment is improper.

Defendants argue that the alleged wrong here is breach of contract—which is not a predicate act under the RICO statute—therefore Plaintiff cannot show a RICO violation. Defendants' argument is legally sound and the point is well taken, but Plaintiff alleges more than a breach of contract. The complaint lists violations of 18 U.S.C. §§ 1341, 1343, and 1351, ECF 1, PgID 10, all of which are predicate RICO acts under §1961(1).[5] And at least the § 1351 claim can survive a motion for summary judgment: Defendants sent communications to Plaintiff (and those like him), that a reasonable jury could find materially false or fraudulent, to recruit or hire him. That said, Plaintiff must show that the violations were both a "but for" cause and a proximate cause of the costs incurred to live in the United States. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). That issue is genuine and one of material fact.

The parties dispute when Plaintiff knew that he would not be paid until his services were contracted to a third party, and the record does not provide a clear answer to the question. First, the reasonable inferences flip depending on which motion the Court considers. There is an executed offer letter between the parties that suggests Plaintiff is a direct employee of SUSA entitled to an annual salary, and the letter does not indicate that Plaintiff's services must first be contracted to third party. ECF 59-1,

---

[5] The Court recognizes that Plaintiff may have framed his argument differently in portions of his briefs addressing the current motions, but the Court does not find those errant remarks to operate as concessions.

PgID 697. But there are also several emails exchanged. ECF 57-4–57-9. The emails state that Plaintiff would be working on projects, and they also say Plaintiff would be an employee of SUSA upon receiving a visa and then SUSA would "take care" of his salary. ECF 57-6, PgID 619. Taken together with all appropriate inferences, the record does not clearly reveal when Plaintiff knew about the prerequisites to payment and whether he was misled. The jury, as fact-finder, will have to make the determination after evaluating the credibility of the facts presented. Because the disputed fact is material and would establish or refute causation, it presents a genuine issue. Accordingly, summary judgment for either party is improper.

III.   Fraud Claims

Plaintiff alleges that Defendants committed actual and constructive fraud by making a false offer of employment, and that Plaintiff relied on the offer to his detriment. ECF 1, PgID 13. Defendants argue that they are entitled to summary judgment because Plaintiff knew that his employment would not begin until his services were contracted to a third party and therefore his reliance was unreasonable. As discussed in Section II, there is a genuine issue of material fact as to when Plaintiff knew that he would not be paid his full salary until he was placed with a third party. Consequently, summary judgment on the fraud claim is improper.

IV.   Breach of Contract

Under Michigan law, "a party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract[,] and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v. Bennett*, 303 Mich. App. 767, 774 (2013) (quoting *Miller-Davis Co. v. Ahrens Constr.,*

*Inc.*, 296 Mich. App. 56, 71 (2012)).

Plaintiff, in support of his motion for summary judgment, argued that the executed employment offer letter was a valid contract, Defendant breached the contract by refusing to pay Plaintiff his promised salary even though he presented himself for work, and the lost salary constitutes damages. ECF 58, PgID 672–73. At the hearing, Defendants argued that parol evidence should be considered because the executed offer letter did not include a merger or integration clause—and that the parol evidence here sufficiently draws the alleged breach into question to render summary judgment improper. The Court finds Defendants' argument persuasive and will deny Plaintiff's motion.

It is proper to consider parol evidence here. Under Michigan law, parol evidence is not admissible to vary the terms of a contract which is clear and unambiguous. *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 492 (1998). But there are four exceptions: "extrinsic evidence is admissible to show (1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing." *Id.* at 493. The contract here falls under the third and fourth exceptions. The contract is a one page letter, entitled "Employment Offer," and it excludes an integration clause. ECF 59-1, PgID 697. The letter also states that the offer of employment is contingent upon an attached employment agreement. *Id.* Although the parties submitted at the hearing that the employment agreement was never executed, the formatting and

11

content of the letter suggest that the parties—at least at the time of signing—anticipated additional agreements to be executed. Consequently, the offer letter did not embody the final or entire agreement between the parties. It is therefore appropriate for the Court to examine parol evidence.[6]

The extrinsic evidence here renders summary judgment improper. In an email exchange with Plaintiff, Defendant Rodriguez stated "what we offer is to have a decent life in the US, also depending on experience and technology, many times depends on the client." ECF 57-6, PgID 619.[7] She added, "[y]ou go to work for one of our client's projects at whatever location he is" and "[a]lso once you are confirmed for a project we sent you whatever you need to go for project[.]" *Id.* Plaintiff responded: "[t]hanks for your information, i have a better idea of the job now, and there is no problem for me to work by projects." *Id.* at 618. After making all reasonable inferences in favor of Defendants, the exchange could be read as an agreement between the parties that Plaintiff's employment did not begin until he was assigned to a project. Under that reading, Defendants did not breach the contract. So although Plaintiff may ultimately prevail at trial, he is not entitled to judgment as a matter of law.

---

[6] This holding could be read as inconsistent with the Court's rejection of parol evidence in Section I.B. But there are two key differences in the two decisions. First, Plaintiff is the party that may have benefited from the consideration of parol evidence in Section I.B, and he chose to concede at the hearing that the contract governed as written. Even if the Court had considered parol evidence there, the extrinsic evidence is unpersuasive that the parties agreed to anything other than at-will employment, whereas in the present context the extrinsic evidence is sufficient to create a genuine issue of material as to whether Defendant breached.

[7] The email exchange contains many grammatical errors, but the Court will not correct each one so as to not distract the reader.

V.      Case Management

The following claims remain active: (1) the RICO claims, but only as to the funds Plaintiff spent to remain in the United States; (2) the FLSA claims; (3) the fraud claims; (4) the breach of contract claims; and (5) Defendants' counterclaim alleging unjust enrichment.[8] Now that there is greater clarity as to the remaining issues for trial, the Court finds that the parties would benefit from additional facilitation. The Court will therefore refer the remaining issues to a second mediation with Patrick Seyferth.

The Court recognizes that mediation may delay trial preparation, so the Court will reset the remaining schedule. Given the age of the case, the Court will not grant any extensions to the amended trial schedule barring extraordinary circumstances.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment [58, 59, 60] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment [57] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave [61] is **MOOT.**

**IT IS FURTHER ORDERED** that the parties shall contact Patrick Seyferth,[9] no later than November 22, 2017, to schedule mediation. The parties shall immediately notify the Court of the scheduled mediation. The mediation shall occur no later than January 26, 2018 or as otherwise set by Mr. Seyferth. The parties shall immediately

---

[8] Defendants filed counterclaims for breach of contract and unjust enrichment. ECF 12. The parties later stipulated to a dismissal of the breach of contract claim, but not unjust enrichment. ECF 50. Although a stipulation has not been filed yet, Defendants' counsel suggested at oral argument that the unjust enrichment would be dismissed as well.
[9] Mr. Seyferth can be contacted at 248-822-7802.

13

notify the Court upon completion of mediation, indicating only whether a settlement was reached. If the parties reached a settlement, then they shall file a stipulated order of dismissal no later than 21 days after notifying the Court.

**IT IS FURTHER ORDERED** that the final pretrial conference is rescheduled for March 6, 2018 at 10:00 A.M. and the trial is rescheduled for March 20, 2018 at 9:00 A.M. No extensions will be granted barring extraordinary circumstances.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 16, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 16, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager

14